USDC SCAN INDEX SHEET

















```
TKL    6/12/06    14:35
3:06-CV-00897    CATTIE V. WAL-MART STORES
*10*
*AMDCMP.*
```

ORIGINAL

HULETT HARPER STEWART LLP
BLAKE MUIR HARPER, SBN: 115756
DENNIS STEWART, SBN: 99152
SARAH PICKERAL WEBER; SBN: 239979
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139

GOLDMAN, SCARLATO & KARON P.C
MARK S. GOLDMAN
BRIAN D. PENNY
101 West Elm Street, Suite 360
Conshohocken, PA 19428
Telephone: (484) 342-0700
Facsimile: (484) 342-0701

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

HEINS MILLS & OLSON PLC
STACEY MILLS
BRYAN L. CRAWFORD
BRIAN L. WILLIAMS
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

FILED
06 JUN -9 PM 4:08
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE CATTIE, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC., and WAL-MART.COM USA, LLC,<br><br>Defendants. | Case No.: 06CV0897 BEN(CAB)<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, on behalf of herself and all others similarly situated, by her undersigned counsel, upon knowledge as to her own acts and upon information and belief as to Defendants and their actions, bring the following Complaint against Defendants Wal-Mart.com USA, LLC and Wal-Mart Stores, Inc. (collectively "Wal-Mart" or the "Company").

## NATURE OF THE ACTION

1. This class action arises out of the misleading advertising and promotion of the "thread count" of bed linens sold by the Company on its proprietary website, http://www.walmart.com/.

2. Thread count is the number of threads in a square inch of cotton. It is supposed to be an objective measure of the number of threads per square inch of fabric. There is a universal expectation that the higher the thread count, the softer and more luxurious the fabric.

3. Plaintiff and the members of the Class are consumers residing throughout the United States who purchased bed linens from Wal-Mart on its website, http://www.walmart.com/, where the advertising and packaging stated that the bed linens have a thread count significantly in excess of the linens' actual thread count.

4. To create the impression that the Company's store brand bed linens are of better quality and are more affordable than bed linens manufactured by other brands, Defendants violated the industry standard for counting threads and guidelines established by ASTM International and the United States Federal Trade Commission ("FTC") for reporting thread count.

5. Defendants have repeatedly misrepresented the thread count of their store brand bed linens to Plaintiff and members of the Class.

6. By reason of the above-alleged facts, Plaintiff and the Class have sustained damages in an amount to be proven at trial.

7. This Complaint consists of three Counts, alleging violations of the California Business and Professions Code §§ 17200, *et. seq.* and 17500, *et. seq.*, and the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et. seq.* To the extent recoverable pursuant to such claims Plaintiff intends to seek all relief permitted by law including, but not limited to, injunctive relief, damages, disgorgement, interest, restitution, attorneys' fees, and expenses.

## JURISDICITON AND VENUE

8. This Court has subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where "any member of a class of Plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000.00, exclusive of interest and costs," because Plaintiff is a citizen of New Jersey, whereas Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Arkansas and Defendant Wal-Mart.com, a wholly owned subsidiary of Defendant Wal-Mart Stores, Inc., has its headquarters in California, and the amount in controversy exceeds $5,000,000.00.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to Plaintiff's claims arose here.

10. In addition, under the "Terms of Use" of Wal-Mart's website, under the "General" subsection, the Company explicitly chose the California Courts as the exclusive jurisdiction for any action arising out of use of the Company's commercial website. Specifically, Wal-Mart stated, "This Agreement shall be governed by and construed under California law without regard to conflicts of law provisions. Any action or proceeding arising out of or related to this Agreement or your use of this Site must be brought in the state or federal courts of California and you consent to the exclusive personal jurisdiction of such courts."

## PARTIES

11. Plaintiff, Catherine Cattie ("Plaintiff" or "Plaintiff Cattie"), is an individual who purchased "luxury" bed linens from Wal-Mart on its website, http://www.walmart.com/.

12. Defendant Wal-Mart Stores, Inc. and its subsidiaries operate a chain of stores throughout the world. Wal-Mart stores offer a variety of goods including domestic merchandise and home furnishings, bed linens, giftware, household items, and health and beauty care items. As of March 29, 2006, the Company operated more than 3,800 stores in the United States alone and

1  generated net sales of over $300 billion in 2006. Wal-Mart's business began in 1945 when Sam Walton opened his first variety store in Newport, Arkansas. The Company was later incorporated in Delaware in 1969. The Company maintains its principal offices at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

13. Defendant Wal-Mart.com USA, LLC was founded in 2000 and is a wholly owned subsidiary of Wal-Mart Stores, Inc. Wal-Mart.com's headquarters are located at 7000 Marina Boulevard, Brisbane, California 94005.

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class, consisting of all persons or entities who purchased store brand "luxury" bed linens on Wal-Mart's website, which bed linens were advertised on Wal-Mart's website and/or packaged as indicating thread counts in excess of the actual thread counts of the bed linens purchased. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15. The Class is so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiff, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class geographically dispersed throughout the United States.

16. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the California Business and Professions Code, as well as the California Consumer Legal Remedies Act.

17. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

18. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

3

1  questions of law and fact common to the Class are:

2      a.    Whether the California Business & Professions Code and the California Consumer Legal Remedies Act were violated by Defendants' acts and omissions as alleged herein;

    b.    Whether Defendants' marketing of bed linens on their website, http://www.walmart.com/, during the Class Period misrepresented the thread count of bed linens made available for sale on the website; and

    c.    To what extent the members of the Class are entitled to remedies under the claims alleged and the extent of those remedies.

19. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

## SUBSTANTIVE ALLEGATIONS

20. Defendant Wal-Mart Stores, Inc. and its subsidiaries operate a chain of stores throughout the world. Its stores offer a diverse selection of goods from domestic merchandise and home furnishings, including bed linens, to giftware, household items, and health and beauty care items. As of March 29, 2006, the Company operated more than 3,800 stores in the United States.

21. Wal-Mart maintains a website, http://www.walmart.com/. The website allows consumers all over the United States to shop for and to purchase goods sold by Wal-Mart.

22. One of the menus appearing on the Home page of the website lists a category of items "For the Home." Clicking this link leads to a sub-menu for "Bed & Bath." This page contains a menu on the left side of the page, while featured products are showcased down the center of the page. Among the featured items on this page is the heading, "Our Highest Quality Sheets Ever," which advises potential customers to "Discover our high-threadcount sheets and feel true luxury."

23. Under this heading and sub-heading are three "luxury" bed linen sets offered for sale. The first bed linen set is advertised as having "440-Threadcount," the second purportedly has

·4

1  "550-Threadcount," and the third purportedly has a luxurious "1,000-Threadcount."

2  24.    These bed linens are made for Wal-Mart and sold exclusively by Wal-Mart. The descriptions of these products appearing on Wal-Mart's website are created by the Company for the explicit purpose of selling these "luxury" bed linens.

25.    Clicking on links to either the 440, 550, or 1,000 thread count bed linen sets brings you to a page containing a description of the bed linens being sold, as well as further links to purchase those goods.

26.    The website description of the "440-Threadcount" bed linens boasts, "This luxurious bedding provides a lush 440 threadcounts per inch for the ultimate in sleeping comfort." Prices for bed linen sets made of this fabric begin at $59.88 on Wal-Mart's website.

27.    The website description of the "550-Threadcount" bed linens boasts, "Made buttery soft with 550-threadcounts per inch, this top-of-the-line bedding softens with each washing to create enduring comfort." Prices for bed linen sets made of this fabric begin at $89.88 on Wal-Mart's website.

28.    The website description of the "1,000-Threadcount" bed linens states, "This amazing set provides a plush 1,000 threadcounts per inch, at an unprecedented price." Prices for bed linen sets made of this fabric begin at $99.88 on Wal-Mart's website.

29.    Misrepresentations of the advertised thread counts also appear on the packaging for these products.

30.    Wal-Mart also sells "non-luxury" bed linen sets from Springmaid© with thread counts of 350. Prices for these bed linen sets start as low as $35.64 a set.

31.    Wal-Mart's generic "luxury" bed linen sets, described in paragraphs 26-28, have thread counts that are the same as, or lower than, the "non-luxury" name brand bed linens, described in paragraph 30, that are sold on Defendants' website. Defendant, however, sells these "luxury" sheet sets at prices that are 68% to 280% higher than the "non-luxury" name brand sheets offered on its website.

32.    For decades, the common practice in the United States textile bedding industry has been to count thread, or yarns, as one yarn, regardless of whether the yarn was a single ply or

5

multi-ply yarn. A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.

33.     ASTM International, an international standards writing organization, addressed the thread count issue in standard D3775-03a, stating that "ends" and "picks" are to be counted as single units regardless of whether they are comprised of single or plied yarns.

34.     As reported in the April 2006 edition of *Good Housekeeping* magazine, tests on the bed linens sold exclusively by http://www.walmart.com/ showed that the advertised thread counts were significantly exaggerated:

> Did you recently buy bedding from Bed Bath & Beyond, Linens 'n Things, Linen Source, or Walmart.com? If so, you may be in for a surprise. GH Institute tests found that some brands sold exclusively at these retailers carry exaggerated thread counts (the number of threads per square inch of fabric). Of the eight brands we tested, only one delivered the count it advertised: JCPenney Home Collection.
>
> Our textile experts got suspicious because of the prices. High thread count indicates that a sheet is exceptionally soft and luxurious, which usually means it's also expensive – but these brands were going for as little as $149 for a queen-size set. (The JCPenney line, which did have the 600 count it claimed, was only $110 for a queen set). How much did the others exaggerate? Bed Bath & Beyond's Synergy brand boasts a thread count of 1,000 – but our tests found only 368. (All results were confirmed by an outside lab.) Other offenders: Royal Heritage, Interiors Sunham Home Fashions, Hotel Fine Linens, The Grand, Distinctive Home and Regency Collection.

35.     On information and belief, Wal-Mart has inflated the thread count of the bed linens it offers on an exclusive basis by counting each "ply" of a thread of yarn as a separate thread. This has the effect of doubling, tripling, or even quadrupling the actual thread count.

36.     The misleading representations of thread count, as made by Wal-Mart on its website, was brought to the attention of the FTC. In an opinion dated August 2, 2005, the FTC opined:

> A representation about thread count, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.

6

> *Based upon the ASTM standard, as well as the information you have provided about standard industry practices with regard to disclosing thread count, we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: "300 thread count, 2 ply yarn." A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased.*

(Emphasis added).

37. Notwithstanding industry practice, or the FTC's opinion, and as demonstrated by the *Good Housekeeping* study, Wal-Mart advertises its thread count based on a number calculated by multiplying the actual thread count by the number of plies within the yarn.

38. This practice is designed to, and does in fact, mislead consumers.

## COUNT 1
### False Advertising in Violation of
### California Business & Professions Code Section 17500

39. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

40. California Business & Professions Code § 17500, provides, in part, as follows:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof; which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

41. Defendants' advertisements for their "luxury" bed linens contain untrue or misleading statements concerning the thread count of Defendants' advertised products in that the

7

1 actual thread count of Defendants' "luxury" bed linens is less than as represented by Defendants.

2   42.   Defendants' advertisements for their "luxury" bed linens contain untrue or misleading statements concerning the thread count of Defendants' advertised products in that, while misrepresenting the thread count of Defendants' "luxury" bed linens, Defendants have failed to disclose, concealed, suppressed or omitted material facts, including the true, lower thread count of Defendants' "luxury" bed linens.

   43.   Defendants' advertisements for "luxury" bed linens containing the same or lower thread counts as other "non-luxury" bed linens sold on Defendants' website, contain untrue or misleading statements, and fail to disclose, conceal, suppress or omit material facts, in that the thread counts are misrepresented and bed linens advertised as "luxury" bed linens are not different products, and contain the same or lower thread counts as less expensive bed linens sold on Defendants' website.

   44.   Defendants knew, or in the exercise of reasonable care should have known, that the statements, representations and omissions set forth in this Complaint were untrue and/or misleading.

   45.   Defendants' conduct of misrepresenting and overstating the thread count of their "luxury" bed linens in Defendants' advertising disseminated in California constitutes multiple, separate violations of Cal. Bus. & Prof Code § 17500.

   46.   Defendants' conduct in failing to disclose, concealing, suppressing or omitting material facts, including the true, lower thread count of Defendants' "luxury" bed linens in Defendants' advertising disseminated in California constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17500.

   47.   Defendants' conduct in overstating the thread counts of its bed linens and advertising in California its "luxury" bed linens containing the same or lower thread count as less expensive "non-luxury" bed linens, without disclosing the material fact that the "luxury" bed linens contained the same or lower thread counts as the "non-luxury" bed linens, and misrepresenting and failing to disclose, concealing, suppressing or omitting the true, lower thread count of such bedding, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17500.

8

48. Plaintiff Cattie and members of the Class have been injured in their money or property as a result of Defendants' false or misleading advertising practices as set forth in this Complaint.

49. As a result of Defendants' false or misleading advertising, Plaintiff Cattie and members of the Class are entitled to injunctive relief, restitution of all amounts paid for Defendants' "luxury" bed linens, disgorgement, interest, and attorneys' fees and costs, pursuant to California law.

## COUNT 2
### Violations of the California Consumer Legal Remedies Act, California Civil Code Sections 1750, *et. seq.*

50. Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

51. The California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5) and (7), provides:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> * * *
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have
>
> * * *
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

52. Defendants' business practices, in advertising, marketing and selling their "luxury" bed linens, of misrepresenting and overstating the thread count of their "luxury" bed linens, when, in fact, the actual thread count of Defendants' "luxury" bed linens is less than as represented by Defendants, constitute multiple, separate violations of Cal. Civ. Code § 1770(a)(5) and (7), including:

9

    a.    Falsely representing that Defendants' "luxury" bed linens have characteristics, uses, benefits or quantities of threads per square inch, when, in fact, they do not; and

    b.    Falsely representing that Defendants' "luxury" bed linens are of a particular standard, quality or grade, made with fabric of a certain advertised thread count, when in fact, they are not.

53.    Defendants' business practices, in advertising, marketing and selling their "luxury" bed linens, of failing to disclose, concealing, suppressing or omitting material information concerning the true, lower thread count of their "luxury" bed linens, constitute multiple, separate violations of Cal. Civ. Code §§ 1770(a)(5) and (7).

54.    Defendants' business practices of advertising, marketing and selling other bed linens containing the same or higher thread counts than the "luxury" bed linens sold on Defendants' website, while misrepresenting the thread count of such products and concealing, suppressing or omitting material facts, including the facts that such "luxury" bed linens contain the same or lower thread counts than the "non-luxury" bed linens sold on Defendants' website, constitute multiple, separate violations of Cal. Civ. Code §§ 1770(a)(5) and (7), including:

    a.    Falsely representing that such "luxury" bed linens have characteristics, uses, benefits, or quantities, including that they are different products and that they contain higher thread counts than less expensive "non-luxury" bed linens, when, in fact, they do not; and

    b.    Falsely representing that such "luxury" bed linens are of a particular standard, quality, grade or style, including that they are of a higher quality than "non-luxury" bed linens sold on Defendants' website, or that Defendants' "luxury" bed linens have a higher thread count, when, in fact, they do not.

55.    Plaintiff Cattie and members of the Class are consumers, as defined by Cal. Civ. Code § 1761(d), in that they purchased "luxury" bedding from Defendants for personal, family or household purposes.

56.    Defendants engaged in the unfair or deceptive acts or practices set forth in this Complaint in transactions intended to result, and which did result, in the sale of goods or services

1   to consumers, including Plaintiff Cattie and members of the Class.

2   57.   Plaintiff Cattie and members of the Class have been injured in their money or property by Defendants' unfair or deceptive acts or practices set forth in this Complaint.

4   58.   As a result of Defendants' violations of Cal. Civ. Code § 1770 as set forth in this Complaint, Plaintiff Cattie and members of the Class are entitled to injunctive relief.

6   59.   Additionally, Defendants have failed to respond to Plaintiff's notice pursuant to Cal. Civ. Code § 1982 with corrective action within the thirty days allowed. Therefore, Plaintiff and the Class are entitled to their actual damages, or at least one thousand dollars ($1,000), restitution, punitive damages, costs and attorneys' fees, interest and any other relief the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

## COUNT 3
## Violations of California Business & Professions Code
## Sections 17200, *et seq.*

60.   Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

61.   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, provides as follows:
> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

62.   Defendants' business practices of advertising, marketing and selling their "luxury" bed linens by misrepresenting and overstating the thread count of those bed linens, are:

a.   Unlawful, as proscribed by, *inter alia*, Cal. Civ. Code §§ 1704, 1710, Cal. Bus. & Prof. Code § 17200, § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, the Consumer Legal Remedies Act, and/or common law fraud, in that Defendants' advertisements and packaging contain untrue or misleading statements which are known by Defendants, or which by the exercise of reasonable care should be known, to be untrue or misleading;

b.   Fraudulent business practices under Cal. Bus. & Prof. Code § 17200, in that

11

06CV0897 BEN(CAB)

members of the public are likely to be deceived by Defendants' acts and practices into believing that Defendants' "luxury" bed linens contain the thread count represented by Defendants when, in fact, they do not; and

  c. Unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the harm caused by Defendants' actions outweigh any benefits accruing from such actions.

  63. In advertising, marketing and selling Defendants' "luxury" bed linens, Defendants made the material misrepresentations and omissions set forth in this Complaint in Defendants' advertising, including labeling, packing materials, website, point-of-sale materials and other promotional materials disseminated by or on behalf of Defendants in California.

  64. Defendants' misrepresentations and omissions set forth in this Complaint are material in that they relate to matters that would likely affect the purchasing decisions or conduct of consumers, including Plaintiff Cattie and the members of the Class, regarding Defendants' products.

  65. Plaintiff Cattie and members of the Class have been injured in their money or property as a result of Defendants' unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising, as set forth in this Complaint.

  66. As a result of Defendants' violations of Cal. Bus. & Prof. Code § 17200, Plaintiff Cattie and members of the Class are entitled to restitution of all amounts paid to Defendants for Defendants' "luxury" bed linens and injunctive relief, disgorgement, interest, and attorneys' fees and costs, pursuant to California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

  A. For an order declaring this a class action;

  B. For declaratory relief finding that Defendants have engaged in unfair, unlawful, or fraudulent business acts or practices in violation of California Business & Professions Code §§ 17200, *et seq.* and 17500;

C. For a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and their officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with Defendants during the pendency of this action and permanently thereafter from engaging in the false advertising and marketing campaign described herein;

D. For restitution to all persons from whom Defendants unlawfully, unfairly, or fraudulently took money, including accrued interest, in addition to other unjust enrichment of Defendants, in an amount to be proven at trial;

E. For actual damages suffered by Plaintiff and the Class;

F. For interest at the maximum rate allowed by law;

G. For costs of suit;

H. For Plaintiff to be awarded attorneys' fees and all litigation expenses pursuant to California Civil Code § 1780(d) and California Code of Civil Procedure § 1021.5. Alternatively, for all attorneys' fees and all litigation expenses to be awarded pursuant to the substantial benefit doctrine, the common fund doctrine, or any other provision of law; and

I. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 9, 2006

HULETT HARPER STEWART LLP
BLAKE MUIR HARPER
DENNIS STEWART
SARAH PICKERAL WEBER

*/s/ Dennis Stewart*
DENNIS STEWART

550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139

13

| | |
|---|---|
| 1 | GOLDMAN, SCARLATO & KARON P.C |
| 2 | MARK S. GOLDMAN<br>BRIAN D. PENNY |
| 3 | 101 West Elm Street, Suite 360<br>Conshohocken, PA 19428 |
| 4 | Telephone:  (484) 342-0700<br>Facsimile:  (484) 342-0701 |
| 5 | |
| 6 | HEINS MILLS & OLSON PLC<br>STACEY MILLS |
| 7 | BRYAN L. CRAWFORD<br>BRIAN L. WILLIAMS |
| 8 | 3550 IDS Center<br>80 South Eighth Street |
| 9 | Minneapolis, MN 55402<br>Telephone:  (612) 338-4605 |
| 10 | Facsimile:  (612) 338-4692 |
| 11 | |
| 12 | THORNTON & NAUMES LLP<br>GARRETT J. BRADLEY |
| 13 | 100 Summer Street, 30th Floor<br>Boston, MA 02110 |
| 14 | Telephone:  (607) 720-1333<br>Facsimile:  (607) 720-2445 |
| 15 | |
| 16 | Attorneys for Plaintiff |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

14

06CV0897 BEN(CAB)

## PROOF OF SERVICE

*Catherine Cattie vs. Wal-Mart Stores, Inc.*
Case No.: 06CV0897 LAB CAB

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 550 West C Street, Suite 1600, San Diego, CA 92101.

That on June 9, 2006, I served the following document(s) entitled: **SECOND AMENDED CLASS ACTION COMPLAINT** on ALL INTERESTED PARTIES in this action:

**SEE ATTACHED SERVICE LIST**

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

■ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be contained in an overnight envelope and to be deposited in a **Federal Express/Overnite Express** box located at 550 West C Street, San Diego, California, for delivery to the above address(es).

☐ **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown on the attached service list. The facsimile machine I used reported no error and I caused the machine to print a transmission record of the transmission.

☐ **BY PERSONAL SERVICE:** I had such envelope delivered by hand where indicated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 9, 2006, at San Diego, California.

*/s/ Sheralynn M. Machado*
SHERALYNN M. MACHADO

**BED LINENS**
No. 06CV0897LAB(CAB)
Service List

**PLAINTIFF'S COUNSEL**

Mark S. Goldman
Brian D. Penny
GOLDMAN, SCARLATO & KARON P.C
101 West Elm Street, Suite 360
Conshohocken, PA  19428
Telephone:   (484) 342-0700
Facsimile:    (484) 342-0701

Stacey Mills
Bryan L. Crawford
Brian L. Williams
HEINS MILLS & OLSON PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:   (612) 338-4605
Facsimile:    (612) 338-4692

Blake Muir Harper
Dennis Stewart
Sarah P. Weber
HULETT HARPER STEWART LLP
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:   (619) 338-1133
Facsimile:    (619) 338-1139

Garret J. Bradley
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA  02110
Telephone:   (607) 720-1333
Facsimile:    (607) 720-2445

**DEFENSE COUNSEL**

Steven H. Frankel
SONNENSCHEIN NATH &
 ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA  94105
Telephone:   (415) 882-5000
Facsimile:    (415) 543-5472

5/30/06