















KAJ   7/18/06   9:10
3:06-CV-00897   CATTIE V. WAL-MART STORES
*18*
*OPPM.*

1  HULETT HARPER STEWART LLP
   BLAKE MUIR HARPER, SBN: 115756
2  DENNIS STEWART, SBN: 99152
   SARAH PICKERAL WEBER; SBN: 239979
3  550 West C Street, Suite 1600
   San Diego, CA 92101
4  Telephone:     (619) 338-1133
5  Facsimile:     (619) 338-1139

6  GOLDMAN, SCARLATO & KARON P.C          HEINS MILLS & OLSON PLC
7  MARK S. GOLDMAN (*pro hac vice* pending)   STACEY MILLS; CA SBN: 109644
   BRIAN D. PENNY (*pro hac vice* pending)    BRYAN L. CRAWFORD (*pro hac vice* pending)
8  101 West Elm Street, Suite 360             BRIAN L. WILLIAMS (*pro hac vice* pending)
   Conshohocken, PA 19428                     3550 IDS Center
9  Telephone:     (484) 342-0700             80 South Eighth Street
                                             Minneapolis, MN 55402
10 Facsimile:     (484) 342-0701            Telephone:     (612) 338-4605
                                             Facsimile:     (612) 338-4692
11 Attorneys for Plaintiff
   [Additional Counsel on Signature Page]

12

                    IN THE UNITED STATES DISTRICT COURT
13
                    SOUTHERN DISTRICT OF CALIFORNIA
14

   CATHERINE CATTIE, on Behalf of Herself     Case No.: 06CV0897 LAB(CAB)
15 and All Others Similarly Situated,

16                 Plaintiff,                 **CLASS ACTION**

17 v.                                         **PLAINTIFF'S MEMORANDUM OF LAW
                                              IN OPPOSITION TO DEFENDANTS'
18 WAL-MART STORES, INC., et al.              MOTION TO DISMISS SECOND
                                              AMENDED CLASS ACTION
19                 Defendant.                 COMPLAINT IN ITS ENTIRETY
                                              AGAINST WAL-MART STORES, INC.,
20                                            AND THE CLRA CLAIMS AGAINST
                                              WAL-MART STORES, INC. AND WAL-
21                                            MART.COM USA LLC

22
                                             DATE:     July 31, 2006
23                                           TIME:     10:30 a.m.
                                             JUDGE:    Honorable Larry Allen Burns
24                                           PLACE:    Courtroom 9, 2nd Floor

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................................. 2

    A.    Determining Thread Count ......................................................................2

    B.    Defendants' Misrepresentations and Omissions .....................................3

    C.    Defendants' Misleading Statements and Omissions Come to Light.......4

III.  LEGAL STANDARD ......................................................................................... 5

IV.   ARGUMENT....................................................................................................... 6

    A.    Plaintiff Has Properly Asserted Claims Under the CLRA Against Wal-Mart.Com ................................................................................................6

           1.    Wal-Mart.Com May Not Avoid Its Choice of Law Provision.....................6

           2.    Plaintiff, a Non-Resident, Is Not Precluded from Enforcing the CLRA .................................................................................6

    B.    Plaintiff Has Complied with the Notice Provisions of the CLRA ...........9

    C.    Plaintiff Has Standing to Bring Her Claims Against Wal-Mart Stores Because It Directly Participated in the Alleged Unlawful Business Practices ...............................................................................................12

    D.    Plaintiff Also Has Standing to Bring Her Claims Against Wal-Mart Stores Because It Has a Unity of Interest and Ownership with Wal-Mart.Com...............13

    E.    Plaintiff Has Standing to Bring Her Claims Against Wal-Mart Stores Because Wal-Mart.Com Was Acting as Its Agent.................................15

V.    CONCLUSION ................................................................................................16

i

**TABLE OF AUTHORITIES**

## CASES

*AT&T Co. v. Compagnie Bruxelles Lambert,*
  94 F.3d 586 (9th Cir. 1996) ............................................................................. 13

*Associated Vendors, Inc. v. Oakland Meat Co.,*
  210 Cal. App. 2d 825 (1962) .......................................................................... 15

*Automotriz del Golfo de California S.A. de C.V. v. Resnick,*
  47 Cal. 2d 792 (1957) ..................................................................................... 13

*Bowoto v. ChevronTexaco Corp.,*
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) ......................................................... 15

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336 (9th Cir. 1996) ............................................................................. 5

*Castaic Lake Water Agency v. Whittaker Corp.,*
  272 F. Supp. 2d 1053 (C.D. Cal. 2003) .......................................................... 12

*Chan v. Soc'y Expeditions, Inc.,*
  123 F.3d 1287 (9th Cir. 1997) ........................................................................ 13

*Chern v. Bank of America,*
  15 Cal. 3d 866 (1976) ..................................................................................... 11

*Clothesrigger, Inc. v. GTE Corp.,*
  191 Cal. App. 3d 605 (1987) ..................................................................... 6, 8, 9

*Colgan v. Leatherman Tool Group, Inc.,*
  135 Cal. App. 4th 663 (2006) ......................................................................... 11

*Conley v Gibson,*
  355 U.S. 41 (1957) ........................................................................................... 5

*Cortez v. Purolator Air Filtration Prods. Co.,*
  23 Cal. 4th 163 (2000) .................................................................................... 11

*Diamond Multimedia Sys., Inc. v. Superior Court,*
  19 Cal. 4th 1036 (1999) .................................................................................... 7

*Discover Bank v. Superior Court,*
  36 Cal. 4th 148 (2005) ...................................................................................... 8

*Doe v. Unocal Corp.,*
  248 F.3d 915 (9th Cir. 2001) .................................................................... 14, 16

*Gilligan v. Jamco Dev. Corp.,*
  108 F.3d 246 (9th Cir. 1997) ........................................................................... 5

*Hall v. Santa Barbara,*
  833 F.2d 1270 (9th Cir. 1986) .......................................................................... 5

ii

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984).............................................................................................................. 5

*Holley v. Crank,*
    400 F.3d 667 (9th Cir. 2004) ............................................................................................ 13

*In re Pizza Time Theatre Sec. Litig.,*
    112 F.R.D. 15 (N.D. Cal. 1986)........................................................................................ 7

*In re Rubin Bros. Footwear, Inc.,*
    119 B.R. 416 (S.D.N.Y. 1990) ........................................................................................ 15

*In re Seagate Techs. Sec. Litig.,*
    115 F.R.D. 264 (N.D. Cal. 1987)..................................................................................... 7

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ................................................................................................... 11

*Kraus v. Trinity Mgmt. Serv., Inc.,*
    23 Cal. 4th 116 (2000) ..................................................................................................... 11

*Laster v. T-Mobile United States, Inc.,*
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ...................................................................... 11, 12

*Lee v. Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ....................................................................................... 5, 15

*Lewis v. Telephone Employees Credit Union,*
    87 F.3d 1537 (9th Cir. 1996) ............................................................................................ 8

*McLoughlin v. L. Bloom Sons Co.,*
    206 Cal. App. 2d 848 (1962) ...................................................................................... 13, 14

*Mieuli v. Debartolo,*
    C-00-3225 JCS, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001) .............................................. 15

*Mesler v. Bragg Mgmt. Co.,*
    39 Cal. 3d 290 (1985) ...................................................................................................... 14

*Nordberg v. Trilegiant Corp.,*
    No. C-05-3246MHP, 2006 U.S. Dist. LEXIS 15756 (N.D. Cal. Apr. 4, 2006) ...................... 8

*Norwest Mortgage, Inc. v. Superior Court,*
    72 Cal. App. 4th 214 (1999) .............................................................................................. 7

*Ontario v. Superior Court,*
    2 Cal. 3d 335 (1970) ........................................................................................................ 12

*Outboard Marine Corp. v. Superior Court,*
    52 Cal. App. 3d 30 (1975) .......................................................................................... 10, 11

*Pacific Can Co. v. Hewes,*
    95 F.2d 42 (9th Cir. 1938) ............................................................................................... 15

iii

*Pareto v. FDIC,*
    139 F.3d 696 (9th Cir. 1998) ........................................................................ 5

*Pelletier v. Federal Home Loan Bank,*
    968 F.2d 865 (9th Cir. 1992) ........................................................................ 5

*People v. Bestline Prods., Inc.,*
    61 Cal. App. 3d 879 (1976) ........................................................................ 12

*Slottow v. Am. Cas. Co.,*
    10 F.3d 1355 (9th Cir. 1993) ...................................................................... 14

*State v. Altus Finance,*
    36 Cal. 4th 1284 (2005) .............................................................................. 11

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ...................................................................................... 12

*United States v. Redwood City,*
    640 F.2d 963 (9th Cir. 1981) ........................................................................ 5

*Vess v. Ciba-Geigy Corp.,*
    317 F.3d 1097 (9th Cir. 2003) .................................................................... 15

*Von Grabe v. Sprint PCS,*
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................. 11, 12

*Washington Mut. Bank v. Superior Court,*
    24 Cal. 4th 906 (2001) ................................................................................. 6

*Wenger v. Lumisys, Inc.,*
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) .......................................................... 5

*Williford v. California,*
    352 F.2d 474 (9th Cir. 1965) ........................................................................ 5

*XDP, Inc. v. Watumull Props., Corp.,*
    Civil No. 99-1703-AS, 2004 U.S. Dist. LEXIS 12057 (D. Or. May 14, 2004).................... 12

## STATUTES, RULES & REGULATIONS

California Business & Professions Code
    § 17200.................................................................................................... 1, 7
    § 17500......................................................................................................... 1

California Civil Code
    § 1760........................................................................................................... 7
    § 1761........................................................................................................... 7
    § 1761(d)....................................................................................................... 7
    § 1770(a)....................................................................................................... 7
    § 1780(a)..................................................................................................... 10
    § 1780(a)(1), (4)..................................................................................... 10, 11
    § 1780(a)(3) ...................................................................................... 10, 11, 12
    § 1782......................................................................................................... 12

§ 1782(a) ................................................................................................................ 10, 11
§ 1782(d) ...................................................................................................................... 9

v

## I.    INTRODUCTION

Plaintiff Catherine Cattie ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Motion"). Plaintiff brought this action on behalf of herself and other similarly situated consumers who were injured by Defendants' misrepresentations and omissions concerning the thread count of certain store brand "luxury" bed linens. *See* Plaintiff's Second Amended Class Action Complaint, filed June 9, 2006 ("Complaint") ¶¶ 1-5.[1] Ignoring the industry standard for counting threads as established by ASTM International ("ASTM") and recognized by the United States Federal Trade Commission ("FTC"), Defendants induced Plaintiff and the proposed class[2] to purchase bed linens by representing them to be of better quality (i.e., higher thread count) and more affordable than competing brands. *Id.*

Defendants' Motion coyly steers clear of the substantive allegations in Plaintiff's Complaint.[3] Rather, Defendants' Motion sets forth a host of futile arguments relating to Plaintiff's purported lack of standing and noncompliance with statutory notice provisions. *See, e.g.,* Def. Mem. at 1. Notably, Defendants have not moved to dismiss the entire Complaint. Defendants' Motion does not contest the § 17200 and § 17500 claims against Defendant Wal-Mart.Com USA LLC ("Wal-Mart.Com").

Plaintiff, however, does have standing to sue Wal-Mart.Com under the California Consumer Legal Remedies Act ("CLRA"), and fully complied with its notice provisions. Plaintiff also has standing to sue Defendant Wal-Mart Stores Inc. ("Wal-Mart Stores") because it has a unity of interest and ownership with Wal-Mart.Com. Accordingly, Defendants' Motion should be

---

[1]  All paragraph references herein, unless otherwise noted, relate to the Complaint.

[2]  The proposed class consists of "all person or entities who purchased store brand "luxury" bed linens on [Defendants'] website and/or packaged as indicating thread counts in excess of the actual thread counts of the bed linens purchased. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal controlling interest." ¶ 14.

[3]  *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Second Amended Class Action Complaint in its Entirety Against Wal-Mart Stores, Inc. and the C.L.R.A. Claims Against Wal-Mart Stores, Inc. and Wal-Mart.Com USA LLC ("Def. Mem.") filed June 15, 2005.

1

1    denied in its entirety.

2    **II.     STATEMENT OF RELEVANT FACTS**

3         **A.     Determining Thread Count**

4         "Thread count" refers to the number of threads in a square inch of fabric.   ¶ 2.   As

5    recognized by Defendants, there is a universal expectation that the higher the thread count, the

6    more soft and luxurious the fabric.   *Id.   See* ¶ 22 (Wal-Mart.Com's statement that online

7    consumers should "discover [its] high-thread count sheets and feel true luxury.").   For decades, the

8    common practice in the United States textile bedding industry has been to count thread as one

9    yarn, regardless of whether the yarn was a single-ply or multi-ply yarn.   ¶ 32.   A multi-ply yarn is

10   one yarn that has been created by twisting two or more yarn together.   ¶ 32.

11        ASTM, an international standards writing organization, formalized the standard for

12   counting threads in standard No. D3775-03a, which unambiguously states that "ends" and "picks"

13   are to be counted as *single units* regardless of whether they are comprised of single or plied yarns.

14   *See* ASTM D3775-03a.   ASTM is an international voluntary standards organization that develops

15   and produces technical standards for materials, products, systems and services.   ASTM standards

16   compliance is voluntary but in the United States, with the 1995 passage of the National

17   Technology Transfer and Advancement Act, the U.S. Government is required to use privately

18   developed standards whenever possible.   More than 2,400 citations of ASTM standards appear in

19   the U.S. Code of Federal Regulations.   *See* Jeff Grove, "*ASTM International and Public Policy*,"

20   April 2005, www.astm.org.   In an August 2, 2005 opinion letter,[4] the FTC recognized the ASTM

21   standard:

22        A representation about thread count, like other objective, material claims about a
         product, must be supported by a "reasonable basis."   In determining what
23       constitutes a reasonable basis for claims, we consider what experts in the field
         believe is appropriate, including whether there are relevant consensus based test
24

25   _____
     [4]  The August 2, 2005 opinion letter was precipitated by a May 23, 2005 letter to the FTC from the
26   National Textile Association ("NTA"), Boston, Massachusetts.   The NTA requested a staff
     opinion "regarding the method for determining thread count in textile bedding products" because
27   "[t]hread count has evolved over time as a key indicator used by consumers to make purchasing
     decisions" and the recent practices of some bedding suppliers had "created confusion in the
28   marketplace."

                                             2

procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.

**Based upon the ASTM standard, as well as the information you have provided about standard industry practices with regard to disclosing thread count, *we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example, '300 thread count, 2 ply yarn.' A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased.***

¶ 36 (emphasis added). Despite the FTC opinion, Defendants continue to misrepresent the thread count of their store brand "luxury" bed linens to consumers. ¶ 5.

**B.      Defendants' Misrepresentations and Omissions**

Wal-Mart.Com, a California LLC located in Brisbane, California, is a wholly-owned subsidiary of Wal-Mart Stores. ¶ 13; Def. Mem. at 3. Wal-Mart.Com maintains a website, http://www.walmart.com ("the Website"). Through the Website, Defendants offer consumers a variety of domestic merchandise and home furnishings, including bed linens. ¶¶ 20-21.

In April of 2006, the "Bed & Bath" section of the Website featured a number of products, including "[Defendants'] Highest Quality Sheets Ever." ¶ 22. Defendants encouraged online consumers to "[d]iscover [their] *high-thread count sheets and feel true luxury*." *Id.* (emphasis added). These luxury bed linens were made for, and sold exclusively by, Defendants. ¶ 24. The Website offered three store brand "luxury" bed linen sets for purchase – with overstated thread counts of 440, 550, and 1000. ¶¶ 23-28.

Defendants created detailed product descriptions for these luxury bed linen sets, but failed to disclose their true thread counts. ¶ 24. Packaging materials also reflect the purported thread counts of these bed linen sets. ¶ 29. For example, the Website's description of the 1,000 Thread Count set states that the "amazing set provides a plush *1,000 thread counts per inch*, at an unprecedented price." ¶ 28 (emphasis added). The "440 Thread Count" and "550 Thread Count" bed linen sets advertised "440 thread counts per inch" and "550 thread counts per inch," respectively. Prices for the 1,000 Thread Count set began at $99.88. *Id.* Even at these

3

1  "unprecedented" prices, however, the 1,000 Thread Count and other luxury bed linen sets were

2  priced *68-280% higher* than Defendants' "non-luxury" sets – which advertised significantly lower

3  thread counts. ¶ 31.  For example, Wal-Mart.Com sold a 350 thread count "non-luxury" bed linen

4  set made by Springmaid© for as low as $35.64.  ¶ 30.  Based, in part, on such misrepresentations

5  and omissions, Plaintiff purchased one set of 100% cotton, queen-size sateen 1000-thread count

6  sheets through Wal-Mart.Com on April 7, 2006 for $99.88.  ¶ 11; Def. Mem. at 2.

7      **C.**      **Defendants' Misleading Statements and Omissions Come to Light**

8        The April 2006 edition of *Good Housekeeping* magazine reported on thread count tests

9  performed on bed linens sold by a number of large retailers, including Defendants.  ¶ 34.  The tests

10  had disclosed that Defendants' advertised thread counts were significantly exaggerated.   The

11  article, in pertinent part, stated:

12        Did you recently *buy bedding from* Bed Bath & Beyond, Linens 'n Things, Linen

13        Source, or *Walmart.com*?  If so, you may be in for a surprise.  GH Institute tests
         found that some brands sold exclusively at these retailers carry exaggerated thread

14        counts (the number of threads per square inch of fabric).  *Of the eight brands we*
         *tested, only one delivered the count it advertised:  JCPenney Home Collection.*

15
16        Our textile experts got suspicious because of the prices.   *High thread count*
         *indicates that a sheet is exceptionally soft and luxurious, which usually means it's*

17        *also expensive* – but these brands were going for as little as $149 for a queen-size
         set.  (The JCPenney line, which did have the 600 count it claimed, was only $110

18        for a queen set).  How much did the others exaggerate?  Bed Bath & Beyond's
         Synergy brand boasts a thread count of 1,000 – but our tests found only 368.  (All

19        results were confirmed by an outside lab.)   Other offenders:   Royal Heritage,
         Interiors Sunham Home Fashions, Hotel Fine Linens, The Grand, Distinctive Home

20        and Regency Collection.

21  *Id.*  In other words, *Good Housekeeping* determined that Defendants and others had inflated the

22  thread count of their exclusive store brand "luxury" bed linens.

23        Notwithstanding industry practice and the FTC's opinion, and as demonstrated by the

24  *Good Housekeeping* study, Defendants have ignored the proper standard for determining thread

25
26
27
28

4

1   count.[5]  Instead, Defendants continue to multiply the actual thread count by the number of plies

2   within the yarn.  *See* Def. Mem. at 3.  That practice has the effect of doubling, tripling, or even

3   quadrupling the actual thread count.  ¶¶ 35-37.  Accordingly, Defendants' practice is designed to,

4   and does, mislead consumers.  ¶ 38.

5   **III.   LEGAL STANDARD**

6          For purposes of Defendants' Motion, the Court must assume all facts alleged in Plaintiff's

7   Complaint as true in their entirety.  *See* ¶¶ 1-38; *Hishon v. King & Spalding*, 467 U.S. 69, 73

8   (1984); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998); *Williford v. California*, 352 F.2d 474,

9   475-76 (9th Cir. 1965).  The Court must also draw all reasonable inferences in Plaintiff's favor.

10  *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *Pelletier v. Federal Home Loan*

11  *Bank*, 968 F.2d 865, 872 (9th Cir. 1992).  *See also Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

12  340 (9th Cir. 1996).

13         Further, a complaint may not be dismissed for failure to state a claim "unless it appears

14  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

15  him to relief."  *Conley v Gibson*, 355 U.S. 41, 45-46 (1957); *Gilligan v. Jamco Dev. Corp.*, 108

16  F.3d 246, 248 (9th Cir. 1997).  "Motions to dismiss are therefore generally viewed with disfavor

17  under this liberal standard."  *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1239 (N.D. Cal. 1998).

18  "It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and

19  is rarely granted.'"  *Hall v. Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir. 1986) (citation omitted).

20  Finally, dismissal without leave to amend is proper only if "'it is clear . . . that the complaint could

21  not be saved by any amendment.'"  *Lee v. Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation

22  omitted).

23

24

---

25  [5]  In fact, Defendants openly "dispute[] that there is any universally-accepted industry standard for
26  determining the thread count of bed linens."  Def. Mem. at 3 n.1.  Defendants even go so far as to
    suggest that a U.S. Custom Service regulation (utilized to help determine the proper *tariff* for
27  imported fabrics) might be an equally plausible standard.  However, that particular method of
    counting thread – counting plied yarns individually – was specifically considered and rejected by
28  the FTC as part of its August 2, 2005 opinion.

# IV.   ARGUMENT

## A.   Plaintiff Has Properly Asserted Claims Under the CLRA Against Wal-Mart.Com

### 1.   Wal-Mart.Com May Not Avoid Its Choice of Law Provision

In addition to being a proper plaintiff to assert claims against the parent corporation, Wal-Mart Stores, Plaintiff may also properly bring CLRA claims against the subsidiary, Wal-Mart.Com.  In fact, the agreement governing her purchase, the "Terms of Use," contains a choice of law provision explicitly calling for the application of California law.  The provision states: "This Agreement *shall be governed by and construed under California law* without regard to conflicts of law provisions."  ¶ 10 (emphasis added.)

To avoid the application of its own choice of law provision, Defendants unconvincingly argue "the California choice of law provision in the website's 'Terms of Use' cannot help Plaintiff because that provision merely applies California law, it does not re-write state statutes." Def. Mem. at 8.  As indicated, however, Defendants admit that the provision clearly "applies California law" to the use of the Website.

Further, California's "strong policy favoring the enforcement" of choice-of-law clauses favors the enforcement of Defendants' provision.  *Washington Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 917 (2001).  This public policy applies equally to choice of law provisions found in "negotiated arm's length transactions between sophisticated business entities" and to those found in consumer contracts of adhesion  *Id.*  Therefore, Defendants' assertion that the CLRA is inapplicable to Plaintiff's claims and is enforceable only by California residents belies the express terms of its own agreement.

### 2.   Plaintiff, a Non-Resident, Is Not Precluded from Enforcing the CLRA

Even without the choice-of-law provision, Plaintiff is not precluded from asserting CLRA claims.  "California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery." *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987).  Despite Defendants' suggestion otherwise, the language of the CLRA does not limit its protection to California

1   residents.

2          The statute's definitional provision, § 1761, states, "'Consumer' means an individual who

3   seeks or acquires, by purchase or lease, any goods or services for personal, family, or household

4   purposes." Cal. Civ. Code § 1761(d). The enumerated wrong provision makes unlawful business

5   practices that are "intended to result or which results in the sale or lease of goods or services to

6   *any consumer . . . .*" Cal. Civ. Code § 1770(a) (emphasis added). Neither provision (nor any other

7   within the statute) purports to confine the meaning of consumer to only those consumers *residing*

8   in California.

9          Rather, as with other California laws noted by Defendants,[6] out-of-state plaintiffs may

10  properly bring CLRA claims where, as here, the defendant's misconduct occurs within

11  California's borders. *See Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222

12  (1999) (holding that California residents may assert UCL claims against non-resident defendants,

13  non-California residents may assert UCL claims against resident defendants, but non-California

14  residents may not assert UCL claims against non-resident defendants). "California [] has a

15  legitimate and compelling interest in preserving a business climate free of fraud and deceptive

16  practices." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1064 (1999); *see*

17  *also In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 272 (N.D. Cal. 1987) (finding that

18  California's interest in preventing "fraudulent conduct of California residents perpetrated primarily

19  in California" justifies application of its laws); *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15,

20  18 (N.D. Cal. 1986) (recognizing that "California has a strong interest in the allegedly fraudulent

21  conduct of its corporations and residents, and in protecting its residents and others from such

22  fraud"). Further, the CLRA contains an express requirement that it be "liberally construed and

23  applied . . . to protect consumers against unfair and deceptive business practices and to provide

24  efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

25          The case which Defendants contend supports their proposition that out-of-state plaintiffs

26

27  ─────────────────────────

[6]   The Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and the False
28  Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"). *See* Def. Mem. at 7.

1    may not bring claims under the CLRA, *Nordberg v. Trilegiant Corp.*, No. C-05-3246MHP, 2006

2    U.S. Dist. LEXIS 15756 (N.D. Cal. Apr. 4, 2006), is not persuasive. *Nordberg* involved CLRA

3    claims against two out-of-state defendant corporations organized under the laws of Delaware with

4    principal places of business in Connecticut and New York. *Id.* at *3. Defendant here, Wal-

5    Mart.Com, is a California business. ¶ 13. Further, the *Nordberg* court did not address the issue of

6    the plaintiff's residency. Rather, in its analysis of whether the conduct complained of is a

7    "transaction" under the CLRA, the court noted in dicta that two of the five named plaintiffs were

8    California residents and therefore had standing to enforce the CLRA against the out-of-state

9    defendants. *Id.* at *32. Defendants' citation to *Discover Bank v. Superior Court*, 36 Cal. 4th 148,

10   159 n.2 (2005) is similarly misguided. The fact that the plaintiffs' counsel in *Discover Bank*

11   "clarified at oral arguent that plaintiff did not plead a CLRA cause of action because he would be

12   ultimately seeking to certify a national class, and therefore did not wish to rely on a California

13   statute" is not an admission "that non-California residents cannot properly bring a CLRA claim."

14   Def. Mem. at 7. Rather, the footnote served only to distinguish the facts of the case before it,

15   which did not include claims under the CLRA, from another case which invalidated a choice of

16   law clause based on another provision of the CLRA.

17       As set forth in the Complaint, Wal-Mart.Com is headquartered in Brisbane, California.

18   ¶ 13. It is from this headquarters that Wal-Mart.Com operates the Website on which it makes false

19   and misleading statements and material omissions about the quality of the bed linens it sells.

20   Thus, Defendants have not shown that Plaintiff "can prove no set of facts" entitling her to relief

21   under the CLRA. *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.

22   1996).

23       Finally, the laws of the forum state are applicable "unless a party litigant timely invokes

24   the law of a foreign state." *Clothesrigger*, 191 Cal. App. 3d at 614. In this event, the proponent of

25   the law of the foreign state must demonstrate that under the relevant choice of law analysis the

26   foreign law should apply. *Id.* Here, Defendants have not invoked the law of any other state.

27   Instead, Defendants argue only that the CLRA, despite the absence of such a limitation in the

28   statute itself, is not enforceable by non-resident plaintiffs.

8

1    Even if Defendant had suggested the law of an alternate forum should apply, under the

2    appropriate choice of law rules, California's "interest in deterring fraudulent conduct by

3    businesses headquartered within its borders and protecting consumers from fraudulent

4    misrepresentations emanating from California would override any possible interest of any other

5    state in application of its own laws to its residents' claims." *Id.*

6    **B.    Plaintiff Has Complied with the Notice Provisions of the CLRA**

7        The CLRA count, "Count 2" of the First Amended Complaint ("FAC"), states that

8    "[Plaintiff] and members of the Class have been injured in their money or property by Defendant's

9    unfair or deceptive acts or practices[.]"  FAC ¶ 57.  Cal. Civ. Code § 1782(d) provides:

10           An action for injunctive relief brought under the specific provisions of Section 1770
             may be commenced without compliance with subdivision (a).  Not less than 30
11           days after the commencement of an action for injunctive relief, and after
             compliance with subdivision (a), the consumer may amend his or her complaint
12           without leave of court to include a request for damages.

13   As authorized by Cal. Civ. Code § 1782(d), the claim further states that "as a result of the

14   Defendants' violations of Cal. Civ. Code § 1770 as set forth in [the] complaint, Plaintiff . . . and

15   members of the Class are entitled to injunctive relief."  FAC ¶ 58.  As noted by Defendants, the

16   Complaint, pursuant to the notice provision of the CLRA, provides that Plaintiff will amend to

17   seek additional forms of relief available under the CLRA.  FAC ¶ 59.

18       At the time she filed the FAC, Plaintiff sent proper notice to Defendants demanding they

19   stop the unlawful activities complained of and compensate each affected consumer.  Thereafter,

20   despite a stipulation signed by Magistrate Judge Bencivengo extending the 30-day limit to respond

21   to Plaintiff's demand to June 8, 2006, Defendants failed to timely respond or take corrective

22   action.[7]   As a result, and pursuant to the same signed stipulation, Plaintiff filed the Second

23   Amended Complaint ("Complaint" as defined earlier) – adding a prayer for actual damages under

24   the CLRA.  ¶ 59.  Therefore, Plaintiff's CLRA claim unquestionably complied with the notice

25

26   [7]  *See* July 14, 2006 Declarations of Bryan L. Crawford ("Crawford Decl."), Mark S. Goldman
     ("Goldman Decl."), and Blake Muir Harper ("Harper Decl.") in Support of Plaintiff's Opposition
27   to Defendants' Motion to Dismiss Second Amended Class Action Complaint in its Entirety
     Against Wal-Mart Stores, Inc., and the C.L.R.A. Claims Against Wal-Mart Stores, Inc. and Wal-
28   Mart.Com USA LLC, filed concurrently herewith.

                                                      9

1   requirement of § 1782(a).

2        Despite recognition of their duty to respond to the notice in the signed stipulation,

3   Defendants now argue the prayer for restitutionary relief contained in the FAC renders the CLRA

4   claim invalid, and further, that Plaintiff has "conceded that monetary recovery of any sort, whether

5   in the form of actual and punitive damages or restitution, [because such] cannot be requested until

6   after the CLRA's 30-day notice period has elapsed." Def. Mem. at 9.  Plaintiff has made no such

7   concession.  Contrary to Defendants' assertions, the statutory notice requirement of the CLRA

8   does *not* address the effect of a prayer for restitution that is made prior to the expiration of the 30-

9   day notice period.  Further, no case considering the notice requirement holds such a prayer would

10  render a CLRA claim invalid.

11       The statutory framework of the CLRA, which expressly provides for the recovery of

12  restitution, makes a clear distinction between "damages," a prayer for which would allow for the

13  dismissal of Plaintiff's CLRA claim, and "restitution."  *See* Civ. Code §1780(a)(1)-(5).  The UCL

14  and FAL contain provisions similar to the "restitution of property" remedy found at § 1780(a)(3).

15  All three statutes contain specific statutory provisions authorizing the remedy of restitution.

16  Unlike the UCL or FAL, however, the CLRA contains the complementary right to seek, as relief

17  separate and apart from restitution of property, an award of "actual damages" and punitive

18  damages.  Cal. Civ. Code § 1780(a)(1), (4).

19       The seminal case interpreting § 1782(a), which mandates 30-day pre-complaint notice prior

20  to the filing of "an action for damages" under the CLRA, is *Outboard Marine Corp. v. Superior*

21  *Court*, 52 Cal. App. 3d 30 (1975).  The *Outboard Marine* decision predates the 1988 amendment

22  to § 1780(a), adding the equitable remedy of "restitution of property," by 13 years.  Given the

23  absence of the availability of restitution under the CLRA when *Outboard Marine* was decided, the

24  decision stands only for the proposition that actions seeking actual or punitive damages cannot be

25  filed unless a 30-day notice is sent. The case, therefore, is not dispositive of the issue before this

26  Court.

27       Additionally, the California Supreme Court has consistently noted a bright line rule

28  separating "damages" from "restitution" in several landmark cases discussing UCL and FAL

                                            10

1   claims analogous to those under the CLRA.  In each case, the court specifically distinguished

2   between the UCL and FAL remedies of injunction and restitution and the recovery of "damages,"

3   holding the UCL and FAL statutory provisions allowing the remedy of restitution do not authorize

4   an award of "damages."  *See, e.g., Chern v. Bank of America*, 15 Cal. 3d 866, 875 (1976); *Korea*

5   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003); *State v. Altus Finance*, 36

6   Cal. 4th 1284, 1304 (2005); *Kraus v. Trinity Mgmt. Serv., Inc.*, 23 Cal. 4th 116, 137 (2000); *Cortez*

7   *v. Purolator Air Filtration Prods.* Co., 23 Cal. 4th 163, 173 (2000).

8         A recent California Court of Appeal opinion, *Colgan v. Leatherman Tool Group, Inc.*, 135

9   Cal. App. 4th 663 (2006), further clarifies the distinction between restitution and damages.  There,

10  the court characterized "restitution of property" under Civil Code § 1770(a)(3) as identical in

11  nature to the restitution afforded by the UCL and FAL and stated "[d]amages under CLRA on the

12  one hand and restitution under the false advertising and unfair competition laws on the other hand

13  are different remedies."  *Id.* at 694-695.  In determining that the trial court's decision to decline to

14  award CLRA damages was not inconsistent with its decision to award restitution under the UCL,

15  FAL and CLRA, the *Colgan* court further distinguished between a CLRA claim for "damages"

16  and a CLRA claim for "restitution":

17         The CLRA provides that an aggrieved consumer may bring an action to recover
           "[r]estitution of property."  (Civ. Code, § 1780, subd. (a)(3).)  There is nothing to
18         suggest that the restitution remedy provided under the CLRA should be treated
           differently than the restitution remedies provided under the false advertising or
19         unfair competition laws.

20  *Id.* at 694.

21        The *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003), and *Laster v. T-*

22  *Mobile United States, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005), decisions cited by Defendants

23  also do not support their position that restitution is the same as damages.  Notably, the plaintiff in

24  *Von Grabe* did not assert a claim for "restitution of property" under § 1780(a)(3), but instead

25  sought tens of thousands of dollars in monetary damages.  312 F. Supp. 2d. at 1291.  In *Laster*, the

26  plaintiffs conceded they had failed to comply with § 1782 (a) by including a "premature allegation

27  of damages" in their complaint.  407 F. Supp. 2d at 1195.  Therefore, the *Laster* court held that

28  under the authority of *Outboard Marine*, "the claim for *damages* under the CLRA must be

11

1    dismissed." *Id.* (emphasis added).  Neither the *Von Grabe* nor *Laster* courts were asked to address

2    whether a complaint seeking "restitution of property" under § 1780(a)(3) requires the 30-day

3    notice called for in § 1782.  On these clear statutory grounds, the Court should deny Defendants'

4    motion to dismiss the CLRA cause of action as set forth in Plaintiff's Complaint.

5          **C.    Plaintiff Has Standing to Bring Her Claims Against Wal-Mart Stores Because**
              **It Directly Participated in the Alleged Unlawful Business Practices**
6

7          A court need not pierce the corporate veil to find a corporation liable where the corporation

8    directly participated in the wrongs alleged.  *See, e.g., Ontario v. Superior Court*, 2 Cal. 3d 335,

9    343 (1970); *People v. Bestline Prods., Inc.*, 61 Cal. App. 3d 879, 920-21 (1976).  Here, Plaintiff

10   seeks to hold Wal-Mart Stores liable for the acts it directly participated in – namely,

11   misrepresentations and omissions concerning the thread count of bed linens sold on its Website.

12         A parent corporation may be liable "for its own actions if the parent managed, directed, or

13   conducted operations related to" the unlawful activity. *XDP, Inc. v. Watumull Props., Corp.*, Civil

14   No. 99-1703-AS, 2004 U.S. Dist. LEXIS 12057, at *14 (D. Or. May 14, 2004).  In other words, a

15   parent corporation may be directly liable where "'the alleged wrong can seemingly be traced to the

16   parent through the conduit of its own personnel and management' and 'the parent is directly a

17   participant in the wrong complained of.'"   *United States v. Bestfoods*, 524 U.S. 51, 64 (1998)

18   (citation omitted).  *See also Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053,

19   1079 (C.D. Cal. 2003) (recognizing that "a corporate parent may be liable if it *operates* its

20   subsidiary's facility – that is, if it directs the workings of, manages or conducts the affairs of the

21   facility") (emphasis in original).

22         The unlawful activities described in the Complaint are those of not only Wal-Mart.Com,

23   but of Wal-Mart Stores itself.  For example, Defendants' Website is boldly branded with the

24   trademark of "Wal-Mart." On every page of the Website, the heading reads "WAL-MART®

25   ALWAYS   LOW   PRICES   ALWAYS," not   "Wal-Mart.Com."     *See*,   *e.g.*,   Website

26   http://www.walmart.com>; Crawford Decl., Ex. 1.  Defendants' homepage contains links for

27   products that are "In Stores Now." *Id.*  Furthermore, the Website represents that products

28   purchased online can be returned, exchanged or even picked up at Wal-Mart stores. *Id.*  Finally,

                                             12

1   bed linens purchased on the Website are not only assigned a Wal-Mart Stores item number, but
2   they are shipped from a distribution center in Bentonville, Arkansas – owned and operated by
3   Wal-Mart Stores. *See* Goldman Decl., Exs. 1 (providing shipping label and receipt for bed linens
4   purchased on Wal-Mart.Com's Website) and 2 (excerpt from Wal-Mart's 10-K for 2005 which
5   states that Wal-Mart Stores owns and operates Wal-Mart.Com's sole distribution center). These
6   facts clearly establish that Wal-Mart Stores was a direct participant in the unlawful business
7   practices alleged in the Complaint.

8       **D.      Plaintiff Also Has Standing to Bring Her Claims Against Wal-Mart Stores
               Because It Has a Unity of Interest and Ownership with Wal-Mart.Com**
9

10          Wal-Mart.Com is a wholly-owned subsidiary of Wal-Mart Stores. While this relationship
11  alone may be insufficient to attribute the acts of Wal-Mart.Com to Wal-Mart Stores, the Court
12  may treat the two entities as one, thus piercing the corporate veil, because the former is merely the
13  alter ego of the latter. "[F]ederal common law allows piercing of the corporate veil where a
14  corporation uses its alter ego to perpetuate a fraud or where it so dominates and disregards its alter
15  ego's corporate form that the alter ego was actually carrying on the controlling corporation's
16  business instead of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir.
17  1997). *See also Holley v. Crank*, 400 F.3d 667, 675 n.1 (9th Cir. 2004) (acknowledging that
18  "although sole ownership of a corporation does not in itself warrant piercing the corporate veil, it
19  does weaken the economic reasons for limited liability for sole corporate shareholder, and when
20  combined with other factors, justifies piercing the corporate veil").

21          Under California law, a corporation may be said to be the alter ego of an individual, thus
22  permitting the court to pierce the corporate veil, where two requirements are met: (1) there be such
23  a unity of interest and ownership that the separate personalities of the corporation and the
24  individual no longer exist; and (2) that, if the acts are treated as those of the corporation alone, that
25  an inequitable result will follow. *Automotriz del Golfo de California S.A. de C.V. v. Resnick*, 47
26  Cal. 2d 792, 796 (1957); *AT&T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir.
27  1996). "[O]nly a difference in wording is used in stating the same concept where the entity sought
28  to be held liable is another corporation instead of an individual." *McLoughlin v. L. Bloom Sons*

13

1   *Co.,* 206 Cal. App. 2d 848, 851 (1962).

2        Not only do Wal-Mart Stores and Wal-Mart.Com have a unity of interest in selling Wal-

3   Mart products for the benefit of Wal-Mart, their corporate personalities are virtually

4   indistinguishable.[8] Thus, Wal-Mart.Com is nothing more than a marketing conduit used by Wal-

5   Mart to sell more Wal-Mart products. "[W]here a parent corporation uses its subsidiary 'as a

6   marketing conduit' and attempts to shield itself from liability based on its subsidiaries' activities,

7   piercing the corporate veil is appropriate and the alter-ego test is satisfied." *Doe v. Unocal Corp.,*

8   248 F.3d 915, 926 (9th Cir. 2001).

9        Furthermore, under California law, "inadequate capitalization of a subsidiary may alone be

10   a basis for holding the parent corporation liable for the acts of the subsidiary." *Slottow v. Am. Cas.*

11   *Co.,* 10 F.3d 1355, 1360 (9th Cir. 1993). Without discovery, however, Plaintiff is unable to

12   determine whether Wal-Mart.Com is adequately capitalized. Ultimately, "The essence of the alter

13   ego doctrine is that justice be done. 'What the formula comes down to, once shorn of verbiage

14   about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an

15   equitable result.'" *Mesler v. Bragg Mgmt. Co.,* 39 Cal. 3d 290, 301 (1985). It would indeed be

16   inequitable to prevent Plaintiff's recovery simply because Wal-Mart Stores' misconduct was

17

18

19

20

21

22

23   [8] As discussed, the Wal-Mart.Com Website prominently displays "Wal-Mart" at the top of the
    web page, not "Wal-Mart.Com." *See* Website http://www.walmart.com; Crawford Decl., Ex. 1.

24   Similarly, its homepage contains links for products that are "In Stores Now" and other products
    purchased online can be returned, exchanged or even picked up at Wal-Mart Stores. *Id.* And

25   lastly, bed linens purchased on the Wal-Mart.Com Website not only are assigned a Wal-Mart
    Stores item number, but they bare shipped from a distribution center in Bentonville, Arkansas

26   owned and operated by Wal-Mart Stores. *See* Goldman Decl., Exs. 1 (providing shipping label
    and receipt for bed linens purchased on Wal-Mart.Com's Website) and 2 (excerpt from Wal-

27   Mart's 10-K for 2005 which states that Wal-Mart Stores owns and operates Wal-Mart.Com's sole

28   distribution center).

1  carried out by its online division masked as a shell corporation.[9]

2  **E.  Plaintiff Has Standing to Bring Her Claims Against Wal-Mart Stores Because Wal-Mart.Com Was Acting as Its Agent**

3

4  Even if the Court chooses not to disregard Wal-Mart's corporate form, a parent corporation

5  can also be held vicariously liable for the acts of its subsidiary corporation if an agency

6  relationship exists between them. *Bowoto v. ChevronTexaco Corp.*, 312 F. Supp. 2d 1229, 1238

7  (N.D. Cal. 2004). "Where one corporation is controlled by another, the former acts not for itself

8  but as directed by the latter, the same as an agent, and the principle is liable for the acts of its agent

9  within the scope of the agent's authority." *Pacific Can Co. v. Hewes*, 95 F.2d 42, 46 (9th Cir.

10  1938). To establish actual agency a party must demonstrate the following: (1) a manifestation by

11  the principal that the agent shall act for him; (2) acceptance by the agent of the undertaking; and

12  (3) an understanding between the parties that the principal is to be in control of the undertaking.

13  *Bowoto*, 312 F. Supp. 2d at 1239 (citing *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 422

14  (S.D.N.Y. 1990)).

15  In the instant matter, Wal-Mart.Com clearly is acting on behalf, and for the benefit, of its

16  parent corporation. As previously noted, the Website itself says "Wal-Mart," not "Wal-

17  Mart.Com," and its homepage contains links for products that are "In Stores Now" and states

18  "Wal-Mart stores are stocked with the latest products and fun . . . ." *See* Website

19  http://www.walmart.com; Crawford Decl., Ex. 2. Furthermore, not only can products purchased

20  online be returned or exchanged at Wal-Mart stores, but some products on the website are marked

21  "Site to Store (SM)" meaning that they can be picked up at a particular Wal-Mart store. *Id.* And,

22

23  [9] Plaintiff requests the opportunity to further amend the Complaint should the Court determine her current allegations are insufficient to establish that Wal-Mart Stores has a unity of interest and

24  ownership with Wal-Mart.Com. Dismissal without leave to amend is proper only if "it is clear . . . that the complaint could not be saved by any amendment." *Lee*, 250 F.3d at 688. *See also Vess v.*

25  *Ciba-Geigy Corp.*, 317 F.3d 1097, 1108 (9th Cir. 2003) (stating that dismissals under Rule 12(b)(6) and Rule 9(b) "should ordinarily be without prejudice"). The determination of whether a

26  subsidiary is an alter ego of its parent corporation is primarily one for trial and is not a question of

27  law. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). Accordingly, simply asserting a unity of interest has been deemed sufficient to survive a motion to

28  dismiss. *Mieuli v. Debartolo*, C-00-3225 JCS, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001).

15

1    as noted above, bed linens purchased on the Website not only are assigned a Wal-Mart Stores item

2    number, but they are shipped from a distribution center owned and operated by Wal-Mart Stores.

3    *See* Goldman Decl., Exs. 1 (providing shipping label and receipt for bed linens purchased on Wal-

4    Mart.Com's Website) and 2 (excerpts from Wal-Mart's 10-K for 2005 which states that Wal-Mart

5    Stores owns and operates Wal-Mart.Com's sole distribution center).

6        Wal-Mart Stores created Wal-Mart.Com solely for the purpose of selling its merchandise

7    over the Internet. It is not a separate entity, but merely an extension of its already existing

8    business. *See Doe*, 248 F.3d at 928 ("[I]f a subsidiary performs functions that the parent would

9    otherwise have to perform, the subsidiary then functions as 'merely the incorporated department of

10    its parent.'") (citation omitted). Thus, Wal-Mart Stores should not be allowed to escape liability

11    merely by virtue of having its agent-subsidiary carry out its misconduct.[10]

12    **V.**    **CONCLUSION**

13        For the reasons set forth above, Plaintiff respectfully requests that the Court deny

14    Defendants' Motion in its entirety.

15    DATED: July 17, 2006        HULETT HARPER STEWART LLP

16                     BLAKE MUIR HARPER
                    DENNIS STEWART

17                     SARAH PICKERAL WEBER

18

19

20                     DENNIS STEWART

21                     550 West C Street, Suite 1600
                    San Diego, CA 92101

22                     Telephone:     (619) 338-1133
                    Facsimile:      (619) 338-1139

23

24

25

26

27

---

28 [10]   Because *none* of Plaintiff's individual claims are barred, *all* of the corresponding claims of the Class will proceed ahead.

GOLDMAN, SCARLATO & KARON P.C
MARK S. GOLDMAN
BRIAN D. PENNY
101 West Elm Street, Suite 360
Conshohocken, PA  19428
Telephone:     (484) 342-0700
Facsimile:     (484) 342-0701

HEINS MILLS & OLSON PLC
STACEY MILLS
BRYAN L. CRAWFORD
BRIAN L. WILLIAMS
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:     (612) 338-4605
Facsimile:     (612) 338-4692

THORNTON & NAUMES LLP
GARRETT J. BRADLEY
100 Summer Street, 30th Floor
Boston, MA  02110
Telephone:     (607) 720-1333
Facsimile:     (607) 720-2445

Attorneys for Plaintiff

17

06CV0897 BEN(CAB)

### PROOF OF SERVICE
*Catherine Cattie vs. Wal-Mart Stores, Inc.*
Case No.: 06CV0897 LAB CAB

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 550 West C Street, Suite 1600, San Diego, CA 92101.

That on July 17, 2006, I served the following document(s) entitled: **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT IN ITS ENTIRETY AGAINST WAL-MART STORES, INC., AND THE CLRA CLAIMS AGAINST WAL-MART STORES, INC. AND WAL-MART.COM USA LLC** on ALL INTERESTED PARTIES in this action:

**SEE ATTACHED SERVICE LIST**

■ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be contained in an overnight envelope and to be deposited in a **Federal Express/Overnite Express** box located at 550 West C Street, San Diego, California, for delivery to the above address(es).

☐ **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown on the attached service list. The facsimile machine I used reported no error and I caused the machine to print a transmission record of the transmission.

☐ **BY PERSONAL SERVICE:** I had such envelope delivered by hand where indicated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 17, 2006, at San Diego, California.

ANITA VILLANUEVA

06CV0897 LAB(CAB)

**BED LINENS**
No. 06CV0897LAB(CAB)
Service List

## PLAINTIFF'S COUNSEL

Mark S. Goldman
Brian D. Penny
GOLDMAN, SCARLATO & KARON P.C
101 West Elm Street, Suite 360
Conshohocken, PA  19428
Telephone:   (484) 342-0700
Facsimile:   (484) 342-0701

Stacey Mills
Bryan L. Crawford
Brian L. Williams
HEINS MILLS & OLSON PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:   (612) 338-4605
Facsimile:   (612) 338-4692

Blake Muir Harper
Dennis Stewart
Sarah P. Weber
HULETT HARPER STEWART LLP
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:   (619) 338-1133
Facsimile:   (619) 338-1139

Garret J. Bradley
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA  02110
Telephone:   (607) 720-1333
Facsimile:   (607) 720-2445

## DEFENSE COUNSEL

Steven H. Frankel
SONNENSCHEIN NATH &
  ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA  94105
Telephone:   (415) 882-5000
Facsimile:   (415) 882-0300

06/12/06