# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE CATTIE, on behalf of Herself and All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>    vs.<br><br>WAL-MART STORES, INC., and WAL-MART.COM USA, LLC,<br><br>                                    Defendants. | CASE NO. 06CV0897-LAB (CAB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On June 9, 2006, Plaintiff filed her second amended complaint ("SAC")[1] in this putative class action. On June 15, 2006, Defendants moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the SAC, including claims by the putative class. The Court took this motion under submission and now renders its decision.

Plaintiff has also requested that the Court take judicial notice of certain California state court decisions.

**I.    LEGAL AND FACTUAL BACKGROUND**

Plaintiff, a resident of New Jersey, alleges she bought bed linens from a website operated by Defendants, and that the thread count of these linens was lower than advertised. Thereafter, she brought this putative nationwide class action, bringing claims under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the False Advertising Law (FAL), Cal. Bus. & Prof.

---

[1] The SAC is the operative complaint in this action.

Code §§ 17500 *et seq.*; and the California Consumer Legal Remedies Act (CLRA), Cal. Civ. Code. §§ 1750 *et seq.*, seeking injunctive relief, damages, disgorgement, interest, restitution, attorneys' fees, and expenses.

Plaintiff alleges Defendant Wal-Mart Stores, Inc. ("Wal-Mart Stores") is a Delaware corporation with its principal place of business in Arkansas, and Defendant Wal-Mart.com USA, LLC ("Wal-Mart.com") is a wholly-owned subsidiary of Wal-Mart Stores, with its principal place of business in Brisbane, California. A limited liability company is a citizen of every state in which its owners are citizens. *Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899(9th Cir. 2006). The import of Plaintiff's allegations, then, is that Wal-Mart.com is a citizen of Delaware and Arkansas. Plaintiff alleges the misleading description of the bed linens was created in and sent from Wal-Mart.com's headquarters in California, and that a substantial part of the transactions giving rise to its claims occurred in California and in this district. Plaintiff further alleges that a class of plaintiffs spread across the United States was injured, and that the total amount in controversy exceeds $5 million. Based on Plaintiff's allegations, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), assuming other requirements, such as party standing, are met.

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Because the Court is under an independent duty to examine its own jurisdiction, the Court's analysis is not limited to potential jurisdictional defects raised by Defendants. *B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999) (holding that federal courts are required to examine jurisdictional issues, even *sua sponte* if necessary).

Defendants contend Plaintiff and the class lack standing to sue either Defendant. Standing is a jurisdictional requirement, and a party invoking federal jurisdiction has the burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Even though California state law has more lenient standing requirements, standing sufficient to meet federal standards is a jurisdictional requirement imposed by Article III of the U.S. Constitution and takes priority. *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997,

999 –1000, 1001–02 (9th Cir. 2001). *Accord Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985)) (holding that standing to bring an action in federal court is determined under federal, not state law). By itself, a state law creating a right to sue cannot confer standing, although it can create an interest or legal right, the infringement of which could constitute an "injury in fact" sufficient to support standing. *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001). Of course, because Plaintiff's claim arises under state law only, Plaintiff's substantive rights in this Court are no greater than they would be in state court, pursuant to the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, Federal law may limit Plaintiff's standing, but it will not expand her right to bring this action beyond what is provided under state law.

To show she has standing, Plaintiff must establish three things:

> First [she must have] suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . .Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61 (citations and internal quotation marks omitted). Here, Plaintiff's cause of action arises under state law. To the extent state law does not recognize Plaintiff's standing, she would lack a "legally protected interest" and would thus lack standing under federal law.

Defendants further contend Plaintiff has failed to state a claim because she did not comply with the CLRA's notice and demand requirement, an element of her claim. Defendants contend because Plaintiff's individual claims are barred, the class claims should also be dismissed.

Defendants submitted evidence in support of their motion. In evaluating the Rule 12(b)(1) motion to dismiss, the Court may properly consider these because Rule 12(b)(1) attacks on jurisdiction can be either facial or factual. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). By presenting evidence, a party converts its motion to dismiss into a factual motion, and the opposing party must furnish evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Savage*, 343 F.3d at 1040 n.2 (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

When deciding either a Rule 12(b)(1) or Rule 12(b)(6) motion, the Court accepts all allegations of fact in the complaint as true and construes them in the light most favorable to the plaintiffs. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations omitted). However, the Court is not require to accept mere conclusory allegations nor does the Court necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Id.*

## II.   DISCUSSION

### A.   Whether Plaintiff Has Standing to Sue Wal-Mart Stores

#### 1. Whether this Argument Is Properly a Factual Rule 12(b)(1) Motion

Defendants contend Plaintiff lacks standing to bring a claim against Wal-Mart Stores because she never bought anything from this Defendant "and therefore she has not suffered any injury-in-fact as a result of anything Wal-Mart Stores, Inc. did or did not do." (Memo of P & A at 1:10–22.) Defendants cite *Lee*, 260 F.3d 997, in support of their contention. *Lee* is not particularly apposite, however. In *Lee*, a plaintiff who concededly did not buy insurance from the defendant attempted to sue as a private attorney general under Cal. Bus. & Prof. Code § 17204, which does not require that a plaintiff suffer injury-in-fact in order to bring suit. 260 F.3d at 1001. The emphasis there was not on whether the right defendant was named, but on whether that plaintiff — as opposed to some other plaintiff who did buy insurance — was the right person to bring the action. Here, however, Plaintiff did buy linens, although it is not clear whether she bought linens from both Defendants or only from Wal-Mart.com.

In essence, Defendants are arguing Plaintiff has sued the wrong Defendant. One element of standing is that a plaintiff's harm must be ""fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citations, alterations, and quotation marks omitted). Thus, if Plaintiff has failed to allege a connection between Defendant Wal-Mart Stores' conduct and her injury, her allegations fail to show she has standing to sue Wal-Mart Stores.

In some cases, naming the wrong defendant is analyzed in terms of standing. *See, e.g.*, *Pritikin v. Department of Energy*, 254 F.3d 791, 798 (2001). On these facts, however, the jurisdictional question of standing is intertwined with the issue of whether Wal-Mart Stores was actually responsible

for marketing the linens on the Wal-Mart.com website, which goes to the merits of the suit. *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (holding that the question of jurisdiction and the merits of an action will be considered intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief). In such a case, jurisdictional finding of disputed facts under Rule 12(b)(1) is inappropriate. *Id.* Where jurisdiction is intertwined with the merits, the Court assumes the truth of the allegations in a complaint unless controverted by undisputed facts in the record. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

In deciding this portion of the Motion, as well as the portion dealing with the CLRA's notice requirement, discussed below, the Court will therefore not look beyond the pleadings. The Court will, however, construe Plaintiff's proffered evidence as arguing Plaintiff could if permitted amend her complaint to add allegations consistent with the proffered evidence.

### 2. Facial Rule 12(b)(1) Challenge to Standing

Plaintiff initially filed suit against Wal-Mart Stores, Inc. Shortly thereafter, Plaintiff amended her complaint to name both Defendants. In the SAC, Plaintiff conflates the two Defendants and refers to both collectively as "Wal-Mart" or the "Company." (SAC at 3:1–4.) Throughout the SAC, the actions giving rise to this lawsuit are attributed to both jointly, even where it is clear only one Defendant is intended. *See, e.g.*, SAC at 4:18 ("[T]he Company operated more than 3,800 stores in the United States."), 4:19 ("Wal-Mart maintains a website, http://www.walmart.com/.") The Court therefore construes the SAC's references to "Wal-Mart" or the "Company" as disjunctive — *i.e.,* either Wal-Mart Stores or Wal-Mart.com. Plaintiff therefore has not adequately alleged Wal-Mart Stores' participation in Wal-Mart.com's wrongful conduct. Because it is never adequately alleged in the SAC that Plaintiff bought bed linens from Wal-Mart Stores, or had any business relationship at all with Wal-Mart Stores, Plaintiff's theory that Wal-Mart Stores participated in the wrongful conduct against her and the other putative class members is not supported by the allegations.

It is well-established that a parent-subsidiary relationship alone is an insufficient basis on which to hold a parent liable for a subsidiary's actions. *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998). Accord *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134

1  (9th Cir. 2003) (citations omitted). There are two exceptions, however: "a subsidiary's contacts may
2  be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as
3  the general agent of the parent." *Id.* (citations omitted). Of course, a parent can also be directly liable
4  if it participates in the wrongdoing. *Bestfoods*, 524 U.S. at 64–65.

5        Plaintiff contends in her Opposition that Wal-Mart Stores is a proper Defendant under three
6  different theories: because Wal-Mart Stores directly participated in the alleged unlawful business
7  practices, because Wal-Mart.com is an alter ego of Wal-Mart Stores,[2] and because Wal-Mart.com was
8  acting as Wal-Mart Stores' agent. (Opp'n at 12:5–16:11.) With regard to the last two theories,
9  Plaintiff identifies facts she believes would support these theories, although she has made no
10 allegations in the SAC supporting either. Plaintiff requests that if the Motion is granted, she be
11 permitted to amend her complaint to plead facts supporting an alter ego theory, although she makes
12 no such request to the other two identified theories.

13       In her Opposition to the Motion, Plaintiff has referred to evidence she believes would show
14 Wal-Mart Stores participated in Wal-Mart.com's wrongdoing. (Opp'n at 12:12–13:7.) The facts she
15 cites, however, merely show a close business relationship in terms of the entities' close identification
16 with each other and use of common channels of distribution. (*Id.*; *cf. id.* at 14 n.8 (citing similar
17 evidence in support of alter ego theory).) While this might show Wal-Mart Stores participated in Wal-
18 Mart.com's distribution of products, or in its business generally, it does not adequately allege Wal-
19 Mart Stores had anything to do with the wrongdoing complained of, *i.e.*, the misleading product
20 description appearing on the Wal-Mart.com website. Plaintiff cites no authority showing that a general
21 business relationship of this kind is sufficient to show that Wal-Mart Stores participated in Wal-
22 Mart.com's wrongdoing. Rather, the rule given in authority Plaintiff cites requires a parent entity to
23 participate directly in the wrongdoing, something Plaintiff has not alleged. (Opp'n at 12:14–18 (citing
24 *Bestfoods*, 524 U.S. at 64–65).)

25 / / /
26 / / /
27
28     [2] Plaintiff uses the phrase "unity of interest," but it is clear she is referring to an alter ego theory of liability.

- 6 -     06CV0897

In California, a party seeking to pierce a corporate veil and hold a parent entity derivatively liable under the alter ego theory must show that two conditions are met:

> 1) there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and 2) there must be an inequitable result if the acts in question are treated as those of the corporation alone.

*F. Hoffman-La Roche, Inc. v. Superior Court*, 130 Cal.App.4th 782, 796 (Cal.App. 6 Dist., 2005) (citations omitted).

Plaintiff acknowledges she is not able, without discovery, to produce evidence showing an inequitable result will follow if the Wal-Mart.com's actions are attributed to it alone. (Opp'n at 13:11–12.) Furthermore, while Plaintiff says she can produce evidence showing the two entities have a close relationship and used common distribution channels, the evidence she cites does not go so far as to show that "the separate personalities" of Wal-Mart Stores and Wal-Mart.com "do not in reality exist." 130 Cal.App.4th at 796. The alter ego test is satisfied, for example, where

> a parent corporation uses its subsidiary as a marketing conduit and attempts to shield itself from liability based on its subsidiaries' activities, . . . [or] where the record indicates that the parent dictates every facet of the subsidiary's business-from broad policy decisions to routine matters of day-to-day operation .

*Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (alterations, internal quotation marks, and citations omitted). Assuming Plaintiff adds allegations suggested by the evidence she cites, the allegations would nevertheless fall short of supporting an alter ego theory of liability.

Because the allegations and proffered evidence are insufficient to show that Wal-Mart Stores was involved in the alleged wrongdoing against Plaintiff or even directs the type of activity Plaintiff complains of, the Court holds that Plaintiff has not adequately shown her injury is traceable to the actions of Wal-Mart Stores. On the basis of the proffered evidence, Plaintiff has not shown she can amend to cure these deficiencies.

**B.     Whether Plaintiff Was Injured**

Defendants contend, citing evidence, that Plaintiff bought one set of sheets eleven days before filing suit, and that there was no evidence Plaintiff was dissatisfied with the sheets she bought, or used them, or even opened them. (Memo of P & A at 2:6–11 (citing Decl. of Steven Frankel).) Defendants

have not brought this as a separate argument, and have not submitted a great deal of evidence in support of it. Their evidence on this point, consisting in pertinent part of letters sent by their counsel, would be inadmissible if offered to show she did not rely on the allegedly false advertising. If Plaintiff did not rely on it, Defendants argue this would show she lacks standing to bring a CLRA claim. Defendants have not specifically extended this argument to her UCL and FAL claims though, as discussed below, the Court examines this issue *sua sponte*. Because this argument is not based on submitted evidence, the court will treat it as a facial Rule 12(b)(1) challenge.

### 1.     CLRA's Reliance Requirement

Plaintiff alleges the thread count of the sheets she bought was lower than advertised and that, therefore, the sheets were not of the quality they were advertised to be. This can constitute an injury under the CLRA, Cal. Civ. Code § 1770(a)(7), provided other requirements are met. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 672 (Cal.App. 2 Dist., 2006) (affirming summary adjudication in favor of plaintiff on CLRA claim where defendant's advertisements misrepresented product's origin).

In a claim for false advertising, one of these requirements is reliance. California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation. *Caro v. Procter & Gamble Co.*, 18 Cal.App.4th 644, 668 (Cal.App. 4 Dist., 1993) (holding no material misrepresentation was made to plaintiff suing under the CLRA because he did not believe the allegedly misleading statement). *Cf. Anunziato v. eMachines, Inc.*, 402 F. Supp.2d 1133, 1137 (C.D.Cal. 2005) (acknowledging the CLRA's reliance requirement).

Because Plaintiff's claims are based on allegations of false advertising, Plaintiff must allege she relied on the false advertising. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp.2d 1181, 1194 (S.D.Cal. 2005). She must also allege the misrepresentation was material as to her, *i.e.*, "that without the misrepresentation, [P]laintiff would not have acted as [s]he did." *Caro*, 18 Cal.App.4th at 668 (citation and quotation marks omitted). The SAC, however, does not allege Plaintiff relied on the false advertising when entering into the transaction to purchase the linens. This is a particular concern because Defendants aver Plaintiff, represented by four different law firms, filed a nationwide lawsuit in four different states a mere eleven days after making her purchase. (Motion at 2:6–9 (citing Decl.

of Steven Frankel).) The possibility that Plaintiff did not rely on the allegedly false advertising when making her purchase is thus more than purely theoretical.

Plaintiff does allege that the advertising resulted in the sale of goods, but does not allege that false statements or claims had anything to do with her decision to purchase the linens. (SAC, ¶ 56). Plaintiff also makes several allegations that "Plaintiff Cattie and members of the Class have been injured in their money or property as a result of Defendants' [false advertising] as set forth in this Complaint." (*Id.* at ¶¶ 48, 57, and 65.) These, however, are conclusory and do not adequately allege reliance. Therefore, the Court holds Plaintiff has not adequately alleged that either she or the putative class has standing to seek relief under the UCL or FAL. *See Laster*, 407 F. Supp.2d at 1194 (dismissing UCL and FAL claims for lack of standing, where plaintiff failed to allege she entered into transaction in reliance on false advertising).

### 2. FAL and UCL Claims

Defendants cite *Pfizer, Inc. v. Superior Court*, 45 Cal.Rptr.3d 840, 843 (Cal.App. 2 Dist. 2006) in their Reply for the proposition that Plaintiff must both plead and prove she relied on the false advertising. Ordinarily, the Court will not consider arguments not raised in the opening brief. *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996) (holding that issues not raised in a party's opening brief are waived). However, the Court must examine its own jurisdiction, including Plaintiff's standing, regardless of whether the issue is properly raised by the parties. *Plumas Unified School Dist.*, 192 F.3d at 1264. The Court therefore, *sua sponte*, raises and addresses the issue of whether Plaintiff has standing to bring FAL and UCL claims. As discussed above, to the extent Plaintiff has suffered no injury under state law, she also lacks standing under federal law.

Although *Pfizer* has been vacated, the Court can look to other authority, such as *Laster* and Proposition 64 itself. There is, however, a split of authority. *Laster*, a decision of this District, holds that under the FAL and UCL as amended by Proposition 64, a plaintiff seeking to represent claims on behalf of others must show "(1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising." 407 F. Supp.2d at 1194 (construing Proposition 64). Where plaintiffs "[f]ail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation as required by Proposition 64."

1 *Id*. For purposes of determining standing, failure to allege reliance leaves open the possibility that Plaintiff is attempting to sue on behalf of other injured parties even though she herself was not injured. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984) (citing the "general prohibition on a litigant's raising another person's legal rights").

The Court is aware of contrary authority, however. *See Anunziato*, 402 F. Supp.2d at 1137 (holding that plaintiffs bringing claims under the FAL and UCL need not plead reliance.) Comparing the holdings of *Laster* and *Anunziato*, the Court finds the reasoning of *Laster* more persuasive.

The Court notes the *Anunziato* court had to distinguish analogous cases where California courts construed "as a result of" language in other statutes (such as the CLRA) as imposing a reliance requirement. 402 F. Supp.2d at 1137. The *Anunziato* court relied on the purposes of the FAL and UCL to conclude requiring reliance would not serve the statutes' consumer protection purposes as well. *Id.* at 1137–38. The *Anunziato* court refused to require a plaintiff to allege he saw or relied on the advertisement. *Id.* at 1137. Requiring a plaintiff merely to show that she bought a product and that the product was falsely advertised would not, in the Court's opinion, show harm occurred "as a result of" the false advertisement.

The *Anunziato* court also looked to the acknowledged purposes of Proposition 64, which included curbing abusive lawsuits by plaintiffs who had not suffered actual harm. 402 F. Supp.2d at 1137–39 (quoting § 1(a) and (b) of Proposition 64, stating the Proposition's the intent to foreclose the ability of an "'unaffected plaintiff,' which was often the sham creation of attorneys," to bring frivolous lawsuits with no public benefit or accountability to the public). Accepting this as the purpose of Proposition 64, the Court concludes requiring nothing more than a token purchase would undermine Proposition 64's reform purposes. Two opinions, *Molski v. Mandarin Touch Restaurant*, 347 F. Supp.2d 860, 867–68 (C.D.Cal. 2004) and *People ex rel. Lockyer v. Brar*, 115 Cal.App.4th 1315, 1316–17 (2004), both cited in *Anunziato*, 402 F. Supp.2d at 1139, outline "shakedown schemes" in which would-be litigants at the direction of attorneys deliberately seek out statutory violations. An attorney who became aware of false advertising but who had no client who was harmed by it could easily "create" a client with standing to sue by directing a willing party who was not deceived by the

///

advertising to make a purchase. Thus, omitting a "reliance" requirement would blunt Proposition 64's intended reforms.

The *Anunziato* court relied heavily on the existence of a large body of consumers who do not or cannot read advertising but who are nevertheless entitled to be dealt with on equal terms with other consumers. 402 F. Supp.2d at 1137–38. While removing disparities between consumers might be a laudable goal, it is not clear that the FAL and UCL, are intended to address this potential disparity. While California courts recognize the "broad, sweeping" scope of the UCL, they are also wary of exceeding legislative intent: "Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has . . . considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 182 (1999). This Court likewise defers to the intent of Proposition 64 to limit rights of action.

The California Court of Appeals has given some guidance on this point in *In re Firearm Cases*, 126 Cal.App.4th 959, 978–79 (Cal.App. 1 Dist. 2005) (discussing the causation requirement for claims under the UCL). In this post-Proposition 64 case, the court cited an older case, *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861 (1999), for the principle that there was no unfairness where, in spite of what they were told, consumers knew the truth regarding the transaction they were entering into. *Firearm Cases*, 126 Cal.App.4th at 979 ("Because the acts of the lender did not deceive the borrowers, causation was absent and the practice could not be deemed unfair.")

While Defendants only raised this issue in their Reply, the parties addressed it in their briefing on the request for judicial notice. Thus, even though the Court considered this issue *sua sponte*, the parties have had both an adequate opportunity and every incentive to make their arguments. The Court therefore concludes Plaintiff's claims under the FAL and UCL must be dismissed without prejudice for failure to adequately allege standing.

**C.    Whether Plaintiff, as a Non-California Resident, Lacks Standing**

Defendants contend a plaintiff suing under the CLRA, unlike the UCL, must be a California resident. They cite *Nordberg v. Trilegiant Corp.*, 445 F. Supp.2d 1082 (N.D.Cal. 2006) and *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005). Neither citation is apposite, however. *Nordberg*

mentions only in passing, without discussion, that two California residents were the only plaintiffs with standing to sue under the CLRA. 445 F. Supp.2d at 1096. The reason for this lack of standing, however, appears to be that defendants were non-California companies and the transactions at issue took place outside of California. Therefore, only transactions with the two California residents had any connection with California. The requirement that a non-California plaintiff has no standing to sue under the CLRA for a transaction having no connection with California is unremarkable and does not help Defendants. In the instant case, where the allegedly misleading advertisement appears to have been sent from California by Wal-Mart.com, an entity with its principal place of business in California.

In *Discover Bank*, the court clarified that plaintiff's counsel intended to have a national class certified and therefore did not plead a CLRA cause of action. 36 Cal.4th at 159 n.2. The reason for this is not fully explained, but appears to relate to the CLRA's antiwaiver provision. In any case, *Discover Bank* dealt with a situation <u>not</u> involving the CLRA. Thus, even if the *Discover Bank* court had concluded a plaintiff suing on a CLRA cause of action must be a California resident, such a conclusion would be dicta.

In any case, California law provides that conduct emanating from California may give rise to a CLRA cause of action. *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 614–15 (Cal.App. 4.Dist. 1987). As the *Clothesrigger* court noted, it was still possible the law of a foreign jurisdiction might be the more appropriate rule of decision, *id.*; however, Defendants have neither raised nor briefed this point.

Therefore, the Court concludes Plaintiff does not lack standing merely because she is not a California resident.

**D. Whether Plaintiff's CLRA Claim Should Be Dismissed Because She Failed to Comply with the CARA's Notice Provisions**

Under Cal. Civ. Code § 1782(a), a consumer must give notice at least thirty days before commencing an action for damages under the CARA, although under § 1782(d) a consumer may bring an action for injunctive relief without giving notice. Under § 1782(d), a consumer who brings an action for injunctive relief may give notice <u>after</u> filing suit, and at least thirty days after giving notice may amend her complaint to add a request for damages.

1    The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim. *See Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40–41 (1975) (addressing failure to give notice under demurrer standard); *Laster*, 407 F. Supp.2d at 1195–96 (dismissing CLRA damages claim with prejudice under Rule 12(b)(6) for failing to comply with notice requirements). *Accord Von Grabe v. Sprint*, 312 F. Supp.2d 1285, 1304 (S.D.Cal. 2003) (dismissing premature claims for damages with prejudice). While this argument should have been brought as part of a Rule 12(b)(6) motion, Plaintiff raised no objection, but responded with full briefing to the argument as set forth in the Motion. The Court will therefore consider the motion as raised and briefed.

Defendants cite *Laster*, 407 F. Supp.2d at 1195–96. There, plaintiffs brought suit without giving notice, and sought both injunctive relief and damages. The court denied this request and dismissed plaintiffs' claim for damages with prejudice. *Id.* at 1196. The court relied on two precedents, *Outboard Marine*, 52 Cal.App.3d at 40–41 (requiring strict application of the notice requirement), and *Von Grabe*, 312 F. Supp.2d at 1304 (dismissing premature claims for damages with prejudice).

Here, there is no dispute Plaintiff first claimed for damages, then gave notice, then amended her complaint, more than thirty days after giving notice. (*See* Decl. of Bryan L. Crawford in Supp. of Opp'n to Mot. to Dismiss SAC, July 14, 2006, at ¶ 2; Decl. of Mark S. Goldman in Supp. of Opp'n to Mot. to Dismiss SAC, July 14, 2006, at ¶ 2; Decl. of Blake Muir Harper in Supp. of Opp'n to Mot. to Dismiss SAC, July 14, 2006, at ¶ 2.) The only dispute is whether this is permissible or whether failure to meet the notice requirement necessitates dismissal.

Under *Laster and Von Grabe*, failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends. This result has been criticized as inconsistent with § 1782(d)'s provision permitting an amendment to add a claim for damages after giving notice. *Deitz v. Comcast Corp.*, 2006 WL 3782902, slip op. at *6 (N.D.Cal. 2006) (permitting amendment where plaintiff had first sought damages and only later given notice).

The holding of *Laster* and *Von Grabe* is, however, consistent with the holding of *Outboard Marine* that "[t]he clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of

1  consumer actions wherever possible and to establish a limited period during which such settlement
2  may be accomplished." 52 Cal.App.3d at 41. The *Outboard Marine* court was adamant: insisting on
3  a "literal application of the notice provisions" was the only way to accomplish the CLRA's purposes.
4  *Id*. *See Von Grabe*, 312 F. Supp.2d at 1304 (interpreting *Outboard Marine* as requiring absolutely
5  strict application of the notice requirement, and noting the absence of contrary cases). Permitting
6  Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would
7  destroy the notice requirement's utility, and undermine the possibility of early settlement.

8  Here, Plaintiff claimed damages without giving Defendants the statutorily required opportunity
9  for settlement. On the basis of conceded facts, it is clear Plaintiff cannot cure this deficiency by
10 amendment. The Court follows *Laster* and *Von Grabe* in concluding Plaintiff's claim for damages
11 under the CLRA must be dismissed with prejudice.

12 **E.     Request for Judicial Notice**

13 Under Fed. R. Evid. 201, the Court may take judicial notice of the records of an inferior court
14 in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Plaintiff asks that the Court
15 take notice of certain judgments of California state courts, namely, *Californians for Disability Rights*
16 *v. Mervyn's, LLC*, 39 Cal.4th 223 (2006) ("*CDR*"), and *Branick v. Downey Savings & Loan Ass'n*, 39
17 Cal.4th 235 (2006). Plaintiff cites these cases as supporting her view of California standing
18 requirements after amendment of the UCL and FAL by Proposition 64, adopted in November, 2004.
19 She contends these two opinions show, even after *Pfizer*, a plaintiff need not show actual reliance on
20 false advertising in order to have standing to bring a FAL or UCL claim. The Court finds the cited
21 opinions relevant, although not to the extent Plaintiff contends. The Court will therefore grant the
22 request for judicial notice.

23 Neither *CDR* nor *Branick* stand for the proposition Plaintiff cites them for. Both hold that the
24 amendments to the UCL and FAL added under Proposition 64 applied to pending claims, and that
25 plaintiffs who had not suffered any "injury in fact"[3] could no longer continue prosecuting actions. The

---

27  [3] "Injury in fact," as used here, refers to injury defined under state law. Nevertheless, because the Court finds Plaintiff has no legally protected interest under state law, Plaintiff cannot show
28  standing under the first prong of the standing analysis of *Lujan*, 504 U.S. at 560–61 (requiring intrusion on a legally protected interest).

California Supreme Court therefore permitted plaintiffs who had suffered injuries in fact to be substituted in place of those who had not. The Court does not rely on *Pfizer*, which the California Supreme Court vacated pending review, *see* 51 Cal.Rptr.3d 707. However, both *CDR* and *Branick* generally require injury in fact as a standing requirement.

### F. Plaintiff's Standing to Seek Injunctive Relief

Plaintiff has asked the Court to enjoin Defendants from "engaging in the false advertising and marketing campaign described [in the SAC]." (SAC at 13:1–5.) Plaintiff also seeks a declaration that Defendants have violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* and 17500. (SAC at 12:26–28.) Although the issue was not raised or briefed by any party, the Court is concerned that Plaintiff may lack standing to seek injunctive or declaratory relief under the CLRA or any other statute. While she might have standing to seek injunctive relief under California law, this Court's power to act is limited by Article III's standing requirements. *Lee*, 260 F.3d at 999–1000, 1001–02.

In this case, Plaintiff may not have been injured at all by the alleged false advertising. Even if she was, however, it is unclear how prospective relief will redress her injury, since she is now fully aware of the linens' thread count. Furthermore, the SAC contains no allegations suggesting she intends to buy linens from Wal-Mart.com in the future. One of Article III's jurisdictional requirements is that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). In addition, a plaintiff seeking declaratory or injunctive relief must show she is "realistically threatened by a *repetition* of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation omitted).

Furthermore, if Plaintiff may not seek injunctive relief, the standing of unnamed class members will not suffice to give the Court jurisdiction to grant it. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.")

///

Thus, it is questionable whether this Court can grant Plaintiff's requests for injunctive and declaratory relief. If this Court lacks jurisdiction to enjoin Defendants or give declaratory relief, consumers in Plaintiff's position may yet be able to split their claim and seek injunctive relief in state court. *See Deitz*, 2006 WL 3782902, slip op. at *4.

### G. Class Claims

Defendants have sought dismissal of class claims on the same bases as they sought dismissal of Plaintiff's claims. Except for the issue of CLRA notice, and Plaintiff's standing as a non-California resident, the class claims track Plaintiff's claims and are supported by the same evidence and allegations; thus, the class claims must be dealt with in the same fashion as Plaintiff's claims.

## IV. Conclusion and Order

For these reasons, Plaintiff's request for judicial notice is **GRANTED**. Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims and the class claims against Defendant Wal-Mart Stores are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims for damages under the CLRA are hereby **DISMISSED WITH PREJUDICE.** The class claims for damages under the CLRA are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims and the class claims under the UCL and FAL are **DISMISSED WITHOUT PREJUDICE**. Plaintiff has not made a showing that she can cure the defects in the SAC by adding allegations; therefore, her request for leave to amend is **DENIED** at this time.

In view of the Court's concerns regarding its jurisdiction to grant Plaintiff's requests for injunctive and declaratory relief, Plaintiff is **ORDERED TO SHOW CAUSE** why these claims should not be dismissed. Plaintiff may do so by serving and filing a memorandum of points and authorities, no more than five pages in length, not counting any appended or lodged material, no later than the close of business on Friday, April 6, 2007. Should Plaintiff fail to do so, the Court may

/ / /
/ / /
/ / /
/ / /
/ / /

1  dismiss these claims without further notice to Plaintiff.  Defendants may, if they wish, file a reply  no
2  more than five pages in length, not counting any appended or lodged material, no later than the close
3  of business on Friday, April 20, 2007.

4  **IT IS SO ORDERED**.

5  DATED: March 16, 2007

*Larry A. Burns*

7  **HONORABLE LARRY ALAN BURNS**
United States District Judge